United States District Court
Southern District of Texas

**ENTERED**

May 10, 2022

Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

JOSE P. GARCIA,              §
    Plaintiff,               §
                      §
                      §
VS.                         §   CIV. NO. 7:21-cv-00158
                      §
KILOLO KIJAKAZI,[1]          §
ACTING COMMISSIONER OF THE   §
SOCIAL SECURITY ADMINISTRATION,  §
    Defendant.              §

## **REPORT & RECOMMENDATION**

Plaintiff, Jose Garcia, proceeding through Plaintiff's Counsel,[2] initiated this action by filing a Complaint for Review of a Denial of Social Security Disability Insurance benefits and Supplemental Security Income benefits pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).[3]   (Dkt. Nos. 1 at 1, 1-1.)   This case was referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636(b).

On January 10, 2022, Plaintiff filed an opposed motion for summary judgment ("Plaintiff's Motion for Summary Judgment") (Dkt. No. 16) and memorandum in support of said motion (Dkt. No. 17).   On February 9, 2022, Defendant filed a cross-motion for summary judgment

---

[1] Kilolo Kijakazi became Acting Commissioner of Social Security on July 9, 2021, replacing Andrew Saul. *See Who is the Current Commissioner of the Social Security Administration?*, Social Security Administration, https://faq.ssa.gov/en-us/Topic/article/KA-02633; *see also* Fed. R. Civ. P. 25(d).

[2] Plaintiff's Counsel is Attorney Melissa Palmer at Olinsky Law Group.   *See* Dkt. No. 16 at 1.

[3] Defendant states Plaintiff brought this action pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), for review of a final decision of the Commissioner of the Social Security Administration denying his application for Supplemental Security Income under Title XVI of the Act, 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).   (Dkt. No. 18-1 at 1.)

("Defendant's Cross-Motion for Summary Judgment") (Dkt. No. 18) and Defendant's Response in Opposition to Plaintiff's Motion for Summary Judgment (Dkt. No. 18-1).   On February 23, 2022, Plaintiff filed a reply to Defendant's cross-motion for summary judgment.   (Dkt. No. 19.) After review of said filings, this case is ripe for disposition on the record.

Plaintiff claims the Commissioner of the Social Security Administration (SSA) (the "Commissioner") improperly decided he is not disabled under the Social Security Administration's definition.   (Dkt. No. 1 at 2, ¶ 10.)   In particular, Plaintiff argues the Administrative Law Judge's (ALJ) mental residual functional capacity (RFC) determination is not supported by substantial evidence as the ALJ did not appropriately consider Dr. Bernardo Flores's opinion.   (Dkt. No. 16 at 1.)   As will be discussed below, Plaintiff's claim should be dismissed as review of the record of the Social Security Administration proceedings establishes that substantial evidence supports the ALJ's mental residual functional capacity finding and the ALJ adequately explained why Dr. Flores's report was not persuasive in this determination.

After a careful review of the record and relevant law, the undersigned recommends Defendant's Cross-Motion for Summary Judgment (Dkt. No. 18) be **GRANTED** and Plaintiff's Motion for Summary Judgment (Dkt. No. 16) be **DENIED**.   It is further recommended that Plaintiff's Complaint (Dkt. No. 1) be **DISMISSED** with prejudice, and the case be closed.

<u>**FACTS**</u>

**i.**   <u>**Background**</u>

Plaintiff is a 56-year-old male who previously worked as a truck driver and in the construction industry.   (Dkt. No. 10-4 at 10, 18-19.)   On July 2, 2018, Plaintiff sought a claim for disability due to various health issues.   *Id.* at 8.   In the initial review process, Plaintiff's medically determinable impairments were classified as Obesity and Depressive, Bipolar and

Related Disorders.   (Dkt. No. 10-5 at 7 (Exhibit 1A).)   Plaintiff claimed he has been unable to work since February 10, 2016, when he was 49 years old.   (Dkt. No. 10-3 at 26.)   The initial claim, as well as reconsideration of said claim, was denied.   (Dkt. No. 10-6 at 2 (Exhibit No. 1B), 16 (Exhibit No. 6B).)[4]   Subsequently, Plaintiff sought a hearing before an ALJ.   *Id.* at 24 (Exhibit No. 8B).

### ii.   **Administrative Proceedings**

On June 22, 2020, the ALJ held a hearing with Plaintiff.[5]   (Dkt. No. 10-4 at 2-42.)   First, Plaintiff testified that he has not had a driver's license since 2016, so his wife drives him around. *Id.* at 15-16.   Plaintiff testified that he uses marijuana twice a week.   *Id.* at 16.   Plaintiff stated he used to be a tractor trailer driver for various companies from 2014 to 2016, however, he also collected income in cash as a construction framer from 2012 to 2016.   *Id.* at 18-19.   These jobs were sporadic.   *Id.* at 20.   Plaintiff testified that since his thyroid was removed, he becomes "cramped up", particularly in the heat when he is attempting to do yardwork.   *Id.* at 21-22. Plaintiff states he does not sleep well due to his frequent urination, he has difficulty putting on his pants and socks because he has difficulty bending his legs and left knee, he has difficulty walking two blocks, he can sit comfortably for 45 minutes, and he avoids getting on his knees, but can get down to the ground and get back up (with some difficulty).   (Dkt. No. 10-4 at 26-27.)   Plaintiff also explained he had been experiencing depression since his surgery.[6]   *Id.* at 28.   According to

---

[4] Citations are to the record as filed in the PACER system with cross-references to the ALJ proceeding's exhibit numbers when warranted.

[5] Plaintiff had representation at the hearing, Attorney Tabitha Gonzalez.   *See* Dkt. No. 10-4 at 2, 4. Attorney Howard D. Olinsky of the Olinsky Law Group also advocated on Plaintiff's behalf.   *See* Dkt. No. 10-3 at 13; Dkt. No. 10-11 at 35-39 (Exhibit 28E) (Letter from August 28, 2020 notifying Appeals Council of his representation).

[6] On February 10, 2017, Plaintiff underwent surgery to remove both his thyroid gland and gallbladder. (Dkt. No. 10-13 at 10-13 (Exhibit 1F).)

Plaintiff, he was on the verge of committing suicide due to not being able to work or help his wife pay their bills. *Id.* Plaintiff also discussed that he has crying spells. *Id.* at 28-29. Apparently, while working, Plaintiff did not have emotional issues. *Id.* at 29. Also, Plaintiff has had blood in his urine for years. *Id.* at 29-30.

Further, the vocational expert, Harris N. Rowzie,[7] testified that considering Plaintiff's age, education, work experience, and residual functional capacity, Plaintiff "would be able to perform the requirements of representative occupations such as Copy Machine Operator ([listing] 207.685-014) Light, SVP 2, with 18,000 jobs available and Ironer ([listing] 590.685-042) Light, SVP 2, with 252,000 jobs available in the national economy."[8]   (Dkt. No. 10-3 at 24, 35; Dkt. No. 10-4 at 34.)   The ALJ noted that the vocational expert's testimony was based on his professional education, experience, and training and was "otherwise consistent and according to the *Dictionary of Occupational Titles*."   (Dkt. No. 10-3 at 36.)

Based on the opinion and testimony of the vocational expert, the ALJ concluded Plaintiff is "capable of making a successful adjustment to other work that exists in significant numbers in the national economy" and is, accordingly, not disabled. *Id.*

### iii.   SUMMARY OF THE PLEADINGS

---

[7] *See* Dkt. No. 10-11 at 30-34 (Exhibit 27E) (Harris Rowzie's resume).

[8] *See* 20 C.F.R. §§ 404.1566(d)(1), 416.966(d)(1) (setting out that in making a determination of whether or not jobs exist in the national economy, the SSA will take notice of the following: Dictionary of Occupational Titles from Department of Labor, County Business Patterns and Census Reports from Bureau of Census, Occupational Analyses from various state employment agencies, and Occupational Outlook Handbook from the Bureau of Labor Statistics); *see also* SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000) (setting out standards for vocational experts who appear before ALJs).

On May 28, 2020, the ALJ determined Plaintiff was not disabled.[9]   (Dkt. No. 10-3 at 36.)

The ALJ followed the five-step sequential evaluation process.[10]   First, the ALJ found Plaintiff had

not engaged in substantial gainful activity since February 10, 2016, the alleged date of the onset

of Plaintiff's injuries that prevented him from working.[11]   *Id.*   Second, the ALJ found Plaintiff's

severe impairments were degenerative joint disease, obesity, unspecified depressive disorder,

generalized anxiety disorder, and severe cannabis use disorder.   *Id.* at 26-27.   Third, the ALJ

found Plaintiff's impairment failed to meet or equal a listed impairment for presumptive disability

under the regulations.   *Id.* at 27-29.   Prior to the last two steps, the ALJ found Plaintiff's RFC

---

[9] Plaintiff bore the burden of proving his disability by establishing a physical or mental impairment lasting at least 12 months that prevents him from engaging in any substantial gainful activity.   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

[10] The five-step process is as follows:

> (1) a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are; (2) a claimant will not be found to be disabled unless he has a "severe impairment"; (3) a claimant whose impairment meets or is equivalent to an impairment listed in Appendix 1 of the regulations will be considered disabled without the need to consider vocational factors; (4) a claimant who is capable of performing work that he has done in the past must be found "not disabled"; and (5) if the claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and residual functional capacity must be considered to determine whether he can do other work.

*Zimmerman v. Astrue*, 288 F. App'x 931, 933-34 (5th Cir. 2008) (citing *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994); 20 C.F.R. §§ 404.1520(a)-(e), 416.920(a)-(e) (describing the five steps)).   A finding that an individual is disabled or, alternatively, is not disabled at any step is "conclusive" and ends the review.   *Zimmerman*, 288 F. App'x at 934 (quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988)).   After step 3, there is an assessment of a plaintiff's residual functional capacity (RFC), essentially an assessment of an individual's ability to work prior to going to the last two steps.   SSR 96-8p, 1996 WL 374814, at *1 (July 2, 1996).   "This assessment of RFC is used at Step 4 ... to determine whether an individual is able to do past relevant work, and at step 5 to determine whether an individual is able to do other work identified in the national economy, considering his or her age, education, and work experience."   *Id.* at *2.   At step 5, the burden is on the government to establish that the evidence demonstrates other jobs exists within the national economy.   20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2).

[11] As noted, on February 10, 2017, Plaintiff underwent surgery to remove both his thyroid gland and gallbladder.   (Dkt. No. 10-13 at 10-13 (Exhibit 1F).)   Plaintiff did have physical ailments prior to the operation but after the operation proceeded to experience significant mood struggles.   (Dkt. No. 10-15 at 85 (Exhibit 6F).)

included the ability to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b)[12],

but with the following exceptions:

> [T]he claimant is limited to frequent balancing and stooping, but only occasional kneeling, crouching, crawling, climbing ramps/stairs and ladders, ropes, or scaffolds, and must also avoid working in extreme heat.  In addition, the claimant can understand, carry out and remember more than simple but less than complex instructions, make decisions, can perform job tasks independently [and] appropriately and at a consistent pace in goal-oriented work in which job tasks do not have to be completed within a strict time deadline, can interact occasionally with the public, supervisors and co-workers, and respond appropriately to routine changes in [a] work setting[.]

*Id.* at 29.  Then, at the fourth step, the ALJ found Plaintiff could not perform his past relevant

work as a tractor trailer driver.  (Dkt. No. 10-3 at 34-35.)  Fifth, "[c]onsidering the claimant's

age, education, work experience, and residual functional capacity, there are jobs that exist in

significant numbers in the national economy that the claimant can perform."  *Id.* at 35.

Consequently, the ALJ found Plaintiff is not under a "disability" as defined by the Social Security

Act.  *Id.* at 36.

The ALJ's decision became the Commissioner's final decision when the Appeals Council

denied Plaintiff's request for review on February 18, 2021.  *See* Dkt. No. 10-3 at 2; *Sims v. Apfel*,

530 U.S. 103, 107 (2000) ("[When Appeals] Council denies the request for review, the ALJ's

opinion becomes the final decision.")  Plaintiff then filed this action pursuant to 42 U.S.C. §§

---

[12] As noted by the Supreme Court, "[t]he regulations implementing the Title II disability standard, 42 U.S.C. § 423(d), . . ., and those implementing the identical Title XVI standard, § 1382c(a)(3), . . . , are the same in all relevant respects." *Sullivan v. Zebley*, 493 U.S. 521, 525 n.3 (1990) (comparing 20 C.F.R. §§ 404.1520-.1530 with §§ 416.920-.930 (1989)).  Section 404 pertains to disability determinations under title II of the Social Security Act (20 C.F.R. § 404.1501) and section 416 pertains to the provisions of title XVI of the Social Security Act (20 C.F.R. § 416.101).  *Sims v. Apfel*, 530 U.S. 103, 107 n.2.  Both sets of regulations are applicable and not materially different in regard to claims under review; however, citations will be provided to both within this report.  *Zebley*, 493 U.S. at 525 n.3; *see also Sims*, 530 U.S. at 107 n.2.

405(g), 1383(c)(3).   (Dkt. No. 1.)   On August 20, 2021, Defendant filed an answer to Plaintiff's Complaint.   (Dkt. No. 9.)

On January 10, 2022, Plaintiff filed Plaintiff's Motion for Summary Judgment ("Plaintiff's MSJ") (Dkt. No. 16) and Plaintiff's Memorandum of Law (Dkt. No. 17), arguing the ALJ's mental RFC determination is not supported by substantial evidence as the ALJ failed to properly evaluate the opinion of consultative examiner Bernardo Flores, Psy.D. ("Dr. Flores"), and "relied on a selective reading of the evidence to support his conclusion." (Dkt. No. 17 at 14.)   On February 9, 2022, Defendant filed Defendant's Motion for Summary Judgment (Dkt. No. 18) and Defendant's Response in Opposition to Plaintiff's MSJ (Dkt. No. 18-1).   Defendant argues the ALJ's evaluation of Dr. Flores's opinion was proper and substantial evidence supports the ALJ's conclusions.   (Dkt. No. 18-1 at 2, 10.)   Plaintiff then filed a reply on February 23, 2022, again arguing the ALJ's mental RFC determination is not supported by substantial evidence as he failed to properly evaluate the opinion of consultative examiner Dr. Flores.   (Dkt. No. 19 at 1.)

Plaintiff prays the Court find that (1) Plaintiff is entitled to Social Security Disability Insurance benefits and Supplemental Security Income benefits under the provisions of the Social Security Act; or (2) remand the case for a further hearing; (3) award attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412,[13] on the grounds that the Commissioner's action

---

[13] The controlling statute for attorney's fees in this case is 28 U.S.C. § 2412.   *See* Fed. R. Civ. P. 54(d)(1), (2)(A)-(B) (where the federal rule is only applicable when there is not a controlling federal statute). According to 28 U.S.C. § 2412, "[a] party seeking an award of fees and other expenses shall, *within thirty days of final judgment in the action,* submit to the court *an application for fees* and other expenses which *shows that the party is a prevailing party* and is eligible to receive an award under this subsection, and the amount sought, including an itemized statement . . . ." (Emphasis added).   Accordingly, because at the time of this prayer for relief there was no final judgment in the action, this is not a proper request for attorney's fees.   Regardless, as will be explained, the ALJ's decision is supported by the record and attorney's fees are not appropriate.   *See* 28 U.S.C. § 2412(d)(1)(A).

in this case was not substantially justified; and (4) order such other and further relief as the Court

deems just and proper.   (Dkt. No. 1 at 3.)

## APPLICABLE LAW & ANALYSIS

**I.      Standard of Review**

Summary judgment is proper when the record reflects that "there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P.

56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).   Although "[t]he same

standard rules governing summary judgments apply to a review of an administrative denial of

social security benefits," appellate review of social security matters is limited by 42 U.S.C. §

405(g).[14]   *Alejandro v. Barnhart*, 291 F. Supp. 2d 497, 500 (S.D. Tex. 2003) (citations omitted).

Once the movant for summary judgment presents "a properly supported motion for

summary judgment, the burden shifts to the nonmoving party to show with 'significant probative

evidence' that there exists a genuine issue of material fact."   *Hamilton v. Segue Software, Inc.*,

232 F.3d 473, 477 (5th Cir. 2000) (citation omitted).   Further, "[w]hen parties file cross-motions

for summary judgment, [the court] review[s] each party's motion independently, viewing the

evidence and inferences in the light most favorable to the nonmoving party."   *Rangel v. Saul*, No.

5:19-CV-31, 2020 WL 3546875, at *2 (S.D. Tex. Mar. 8, 2020) (citing *Cooley v. Hous. Auth. of

City of Slidell*, 747 F.3d 295, 298 (5th Cir. 2014) (internal citation and quotation marks omitted)).

Each party "bears the burden of establishing that no genuine issue of material fact exists and that

it is entitled to judgment as a matter of law."   *Shaw Constructors v. ICF Kaiser Eng'rs, Inc.*, 395

---

[14] For example, although under Federal Rule of Civil Procedure 56 a court can look outside of the pleadings to depositions, answers to interrogatories, admissions on file, and affidavits for evidence, 42 U.S.C. § 405(g) limits a court's review of a social security matter to the administrative record.   *Lovett v. Schweiker*, 667 F.2d 1, 2 (5th Cir. 1981) ("No evidence external to the administrative record is generally admissible in reviewing an administrative action pursuant to 42 U.S.C. [§] 405(g).").

F.3d 533, 539 (5th Cir. 2004) (citing 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2720 (3d ed. 1998)). "If there is no genuine issue and one of the parties is entitled to prevail as a matter of law, the court may render summary judgment." *Id.* (citations omitted); *see also House v. Quarterman*, No. CIV.A. H–07–3248, 2008 WL 896220, at *1 (S.D. Tex. Apr. 2, 2008); *Krippendorf v. Astrue*, No. 3:16-CV-142, 2017 WL 3311233, at *2 (S.D. Tex. Aug. 1, 2017).

Per 42 U.S.C. § 405(g), a district court has the power to affirm, modify, or reverse the decision of the Commissioner, with or without remanding the case for rehearing. Review of the Commissioner's decision is limited to whether "(1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence." *Salmond v. Berryhill*, 892 F.3d 812, 816-17 (5th Cir. 2018) (quoting *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017)) (internal quotation marks omitted); 42 U.S.C. § 405(g). "The phrase 'substantial evidence' is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citing *T-Mobile South, LLC v. Roswell*, 574 U.S. 293, 301 (2015)). And the threshold for providing sufficient "substantial evidence" is not high. *Id.* "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Adams v. Bowen*, 833 F.2d 509, 511 (5th Cir. 1987) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

The court must scrutinize the record in applying the substantial evidence standard. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988). And in doing so, the court "may neither reweigh the evidence in the record nor substitute [its] judgment for the [ALJ's]." *Id.* (citing *Neal v. Bowen*, 829 F.2d 528, 530 (5th Cir. 1987)). "Only where there is a 'conspicuous absence of credible

choices or no contrary medical evidence' will we find that the substantial evidence standard has

not been met." *Courtney B. v. Kijakazi*, No. 4:19-CV-04525, 2021 WL 4243512, at *2 (S.D. Tex.

Sept. 17, 2021) (quoting *Qualls v. Astrue*, 339 F. App'x 461, 464 (5th Cir. 2009)).

"While substantial deference is afforded the Commissioner's factual findings, legal

conclusions and claims of procedural error are reviewed *de novo*." *Gorgol v. Berryhill*, No. SA-

17-CA-109-HJB, 2017 WL 8181018, at *2 (W.D. Tex. Oct. 18, 2017) (citing *Brueggemann v.

Barnhart*, 348 F.3d 689, 692 (8th Cir. 2003) and *Gutierrez v. Barnhart*, No. 04-11025, 2005 WL

1994289, at *4 (5th Cir. Aug. 19, 2005)).

## II.     The ALJ's RFC Determination[15]

Before considering step four of the sequential evaluation process, the ALJ must first

determine the claimant's residual functional capacity (RFC).    20 C.F.R. §§ 404.1520(e),

416.920(e).   In making this finding, the ALJ must consider all of the claimant's impairments,

including impairments that are not severe.   20 C.F.R. §§ 404.1520(e), 404.1545, 416.920(e),

416.945; SSR 96-8p, 1996 WL 374184, at *1-2 (July 2, 1996).[16]

An individual's residual functional capacity is "the extent to which an individual's

medically determinable impairment(s), including any related symptoms, such as pain, may cause

physical or mental limitations or restrictions that may affect his or her capacity to do work-related

---

[15] Plaintiff is solely contesting the ALJ's mental RFC determination, as opposed to any of the findings at the step 1, 2, 3, 4, and 5 analyses.

[16] SSR is in reference to the Social Security Rulings.   "Through SSRs, we [the Social Security Administration (SSA)] convey to the public SSA precedential decisions relating to the Federal old age, survivors, disability, supplemental security income, and special veterans benefits programs."   SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017).   The SSA "may base SSRs on determinations or decisions made at all levels of administrative adjudication, Federal court decisions, Commissioner's decisions, opinions of the Office of General Counsel, or other interpretations of the law and regulations."   *Id.*   Although SSRs do not have the same force and effect as statutes or regulations, they are binding on all components of the Social Security Administration.   *Id.* (citing 20 C.F.R. § 402.35(b)(1)); *see also Zebley*, 493 U.S. at 530 n.9.

physical and mental activities." *Irby v. Barnhart*, 180 F. App'x 491, 493 (5th Cir. 2006) (citing SSR 96–8p, 1996 WL 374184 (July 2, 1996)); *see also* SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017).   When determining the RFC, an ALJ considers descriptions provided by physicians and the claimant, alongside the claimant's overall credibility.  *Hollis*, 837 F.2d at 1386.   If an ALJ's decision states expressly that it was made "[a]fter careful consideration of all the evidence," and there is no reason or evidence to dispute his assertion, then the Fifth Circuit will not disturb the ALJ's conclusions.  *Brunson v. Astrue*, 387 F. App'x 459, 461 (5th Cir. 2010).

Under the sequential process, even if a mental impairment does not meet an impairment listing in Appendix 1 of the regulations (*see* 20 C.F.R. Part 404, Subpart P, Appendix 1), the ALJ needs to continue "on to consider whether the individual can meet the mental demands of past relevant work" despite the limiting effects of his or her impairment and, if the plaintiff cannot meet these demands, whether the plaintiff "can do other work, considering his or her remaining mental capacities reflected in terms of the occupational base, age, education, and work experience."   SSR 85-15, 1985 WL 56857, at *4 (Jan. 1, 1985).   Despite not meeting a listing requirement, the ALJ must not assume that the individual can perform, at a minimum, unskilled work, and the analysis requires careful consideration.  *Id.*   Further, "[b]ecause response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job."  *Id.* at *6.   And, "[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment."  *Id.*

During this review process, any conflicts between the claimant's testimony and the medical records are for the Commissioner to resolve.  *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990) (citing *Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983)).   Even if the court

determines the evidence "preponderates in [the claimant's] favor," a court must still affirm the Commissioner's findings if there is substantial evidence to support these findings. *Carry v. Heckler*, 750 F.2d 479, 482 (5th Cir. 1985) (citing *Patton*, 697 F.2d at 592 and *Olson v. Schweiker*, 663 F.2d 593, 595 (5th Cir. 1981)).   Nevertheless, the ALJ must properly assess a plaintiff's RFC in accordance with the applicable regulations and Social Security Rulings by considering all relevant evidence, including objective medical evidence, medical opinions, and Plaintiff's testimony. *See* 20 C.F.R. §§ 404.1545-.1546, 416.945-.946.

Here, the ALJ found Plaintiff retained the ability to perform the full range of light work, with exceptions.[17]   *See* Dkt. No. 10-3 at 29; 20 C.F.R. §§ 404.1567(b), 416.967(b) (defining "light work" as work that includes lifting no more than 20 pounds at a time with frequent lifting and carrying of objects weighing up to 10 pounds).   In support of this finding, the ALJ stated he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. § 404.1529 and SSR 16-3p" and considered opinion evidence pursuant to the requirements of 20 C.F.R. § 404.1520(c).   (Dkt. No. 10-3 at 29).   Second, the ALJ noted that although the claimant's medically determinable impairments do cause symptoms, plaintiff's statements concerning "the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." *Id.* at 30. As set forth below, the record evidence is consistent with the ALJ's determination and substantial evidence supports the ALJ's conclusion that Plaintiff can perform the full range of light work, with the noted exceptions.

---

[17] The exceptions are listed *supra* Section iii. Summary of the Pleadings at 6.

### A.  Consideration of Medical Reports

Of the evaluations for the ALJ to consider, the ALJ found the evaluation by an internal medicine consultative examiner, Dr. Marisa C. Inigo, persuasive.[18]  (Dkt. No. 10-3 at 33.)   The ALJ, however, did not find the conclusions by the psychological consultative examiner, Dr. Flores, persuasive.  *Id.* at 34.   Plaintiff claims this is an error requiring remand.  (Dkt. No. 17 at 11-15; Dkt. No. 19 at 4.)

"[I]t is the sole responsibility of the ALJ to interpret the medical evidence to determine a claimant's residual functional capacity for work and to weigh the competing evidence." *Bishops v. Saul*, No. 3:19CV9 CWR-LRA, 2020 WL 2310405, at *4 (S.D. Miss. Feb. 20, 2020) (citing *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012)).   Further, "the ALJ is free to reject an opinion, in whole or in part, when the evidence supports a contrary conclusion." *Id.* at *4 (citing *Kneeland v. Berryhill*, 850 F.3d 739, 760 (5th Cir. 2017)).   However, "[a]n ALJ who discounts the diagnoses and opinions of specialists in the field without providing specific, legitimate reasons for doing so has 'impermissibly substitut[ed] a layman's view of a disorder in lieu of an expert opinion.'" *Tusken v. Astrue*, No. 4:08-CV-657-A, 2010 WL 2891076, at *10 (N.D. Tex. May 25, 2010) (citing *Gonzalez v. Barnhart*, No. SA-05-CA-0282-RF, 2006 WL 1875912, at *4 (W.D. Tex. June 30, 2006)), *report and recommendation adopted,* No. 4:08-CV-657-A, 2010 WL 2891075 (N.D. Tex. July 20, 2010).

Plaintiff's subjective complaints about his well-being must be corroborated, at least in part, by objective evidence.  *See Houston v. Sullivan*, 895 F.2d 1012, 1016 (5th Cir. 1989) (citing *Harrell v. Bowen*, 862 F.2d 471, 481 (5th Cir. 1988)).   "The ALJ is not required to show that the

---

[18] The ALJ found Dr. Inigo's medical opinion persuasive because "it is supported by the examiner's clinical findings, including the claimant's steady and symmetric gait, intact sensation throughout, his ability to rise from a sitting position, normal fine/dexterous finger control bilaterally, and 5/5 muscle strength for all tested areas (5F3-5)."  (Dkt. No. 10-3 at 33-34 (citing Dkt. No. 10-15 at 74-76 (Exhibit 5F)).)

RFC is compatible with all of claimant's self-reported symptoms, but instead to evaluate that testimony in the context of objective medical evidence and determine the remaining capacity for work." *Crista B. v. Berryhill,* No. 1:18-CV-00042-BP, 2019 WL 2996553, at *4 (N.D. Tex. June 19, 2019) (citing *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000)), *report and recommendation adopted sub nom. Crista B. v. Saul*, No. 1:18-CV-042-C-BP, 2019 WL 2996021 (N.D. Tex. July 9, 2019). And a plaintiff's daily activities may be used in consideration of the plaintiff's disability status. *Leggett v. Chater*, 67 F.3d 558, 565 n.12 (5th Cir. 1995).

For the plaintiff to show the ALJ's determination is erroneous, "the plaintiff must show that no reasonable person could find support in the record for the RFC assessed by the ALJ." *Crista B.,* 2019 WL 2996553, at *4. It is not enough to show that a mere conflict exists between the plaintiff's alleged symptoms and the ALJ's RFC determination. *Id.* And, "[a]t a minimum, objective medical evidence must demonstrate the existence of a condition that could reasonably be expected to produce the level of alleged pain or their alleged symptoms." *Anthony v. Sullivan*, 954 F.2d 289, 296 (5th Cir. 1992) (citing *Owens v. Heckler*, 770 F.2d 1276, 1281 (5th Cir. 1985)). The ALJ's role is to "interpret" the medical evidence to determine capacity to work. *Fontenot v. Colvin*, 661 F. App'x 274, 277 (5th Cir. 2016) (per curiam).

Pursuant to 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5), the SSA evaluates all medical sources based on five factors: (1) supportability[19], (2) consistency[20], (3) relationship with claimant (considering length of treatment relationship, frequency of examinations, purpose of

---

[19] "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *See* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).

[20] The more consistent, the more persuasive. *See* 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

treatment relationship, extent of treatment relationship, and examining relationship)[21], (4)

specialization[22], and (5) other factors.[23]   Of which, the two most important factors to considering

persuasiveness are supportability and consistency.   *See* 20 C.F.R. §§ 404.1520c(b)(2),

416.920c(b)(2); *Jacqueline L. v. Comm'r of Soc. Sec.*, 515 F. Supp. 3d 2, 7 (W.D. N.Y. 2021)

(citing 20 C.F.R. §§ 404.1520c(a), 416.920c(a)) ("When evaluating the persuasiveness of a

medical opinion, the most important factors are supportability and consistency.").   Under the

revised rules for evidentiary evaluation, the ALJ is not required to assign specific evidentiary

weight to opinions; the ALJ is only required to articulate how the ALJ considered the medical

opinions and prior administrative medical findings by explaining how the ALJ considered the

supportability and consistency factors in relation to these opinions and findings, along with the

other factors as appropriate.   *See* 20 C.F.R. §§ 404.1520c(a), (b)(1)-(2); 416.920c(a), (b)(1)-(2).

In other words, "the ALJ must explain how he considered the "supportability" and "consistency"

factors for a medical sources opinion," and "[t]he ALJ may—but is not required to—explain how

he considered the remaining factors."   *Jacqueline L.*, 515 F. Supp. 3d at 8 (citing 20 C.F.R. §§

404.1520c(b)(2), 416.920c(b)(2)); *see also Steele v. Saul*, 520 F. Supp. 3d 1198, 1209 (D. Alaska

2021).

i.      **The ALJ's RFC Conclusion v. Dr. Flores's RFC Conclusion**

---

[21] These factors will help determine the evaluator's level of knowledge regarding plaintiff's impairment and whether the evaluator has a longitudinal understanding of a plaintiff's impairment.   *See* 20 C.F.R. §§ 404.1520c(c)(3), 416.920c(c)(3).

[22] A medical opinion from someone who has become a specialist through advanced training may be more persuasive than one from someone who is not a specialist.   *See* 20 C.F.R. §§ 404.1520c(c)(4), 416.920c(c)(4).

[23] "This includes, but is not limited to, evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program's policies and evidentiary requirements."   *See* 20 C.F.R. §§ 404.1520c(c)(5), 416.920c(c)(5).

The ALJ concluded the medical evidence is inconsistent with Plaintiff's allegation of disability. (Dkt. No. 10-3 at 30-33.) In reaching this conclusion, the ALJ found Dr. Flores's findings unpersuasive since Dr. Flores relied too heavily on Plaintiff's unsupported self-reporting. *Id.* at 34.

Dr. Flores concluded Plaintiff can understand, carry out, and remember simple instructions, but he would not have consistent ability to sustain concentration and persist in work-related activity at a reasonable pace due to Plaintiff's endorsed physical problems and limited emotional distress tolerance. (Dkt. No. 10-15 at 89 (Exhibit 6F).) Diverging from Dr. Flores's opinion and based on the medical evidence, the ALJ concluded that Plaintiff's allegations of mental impairments were inconsistent with the objective evidence, "which shows no more than moderate affective findings on examination given his routinely intact memory, clear sensorium, full orientation, normal thought process, cooperative behavior, intact concentration, normal judgment/insight, and no hallucinations on exams." (Dkt. No. 10-3 at 32-33 (citing Dkt. No. 10-14 at 14-15, 21 (Exhibit 2F); Dkt. No. 10-15 at 75 (Exhibit 5F); Dkt. No. 10-15 at 88 (Exhibit 6F); Dkt. No. 10-21 at 8, 18 (Exhibit 15F)).)[24] And the ALJ concluded that Plaintiff "can understand, carry out and remember more than simple but less than complex instructions [and] make decisions . . . ." *Id.* at 33. Also, the ALJ stated Plaintiff can "perform jobs tasks independently[,] appropriately[,] and at a consistent pace in goal[-]oriented work in which job tasks do not have to be completed within a strict time deadline . . . ." *Id.*

---

[24] These citations are to exams or medical appointments, respectively on June 28, 2017 (Dr. Davis), March 15, 2017 (Dr. Galke), October 1, 2018 (Dr. Inigo), October 1, 2018 (Dr. Flores), June 26, 2018 (Dr. Bell), and June 30, 2018 (Dr. Beckett). During the exam on October 1, 2018, for example, even Dr. Flores noted that "[d]uring the interview, [Plaintiff's] thoughts appeared clear and coherent" and while Plaintiff's recent memory was poor, immediate memory "was unimpaired" as Plaintiff "successfully completed four calculations on the serial sevens task." *See* Dkt. No. 10-15 at 88 (Exhibit 6F).

Dr. Flores concluded Plaintiff would struggle to maintain effective social interaction on a consistent and independent basis with supervisors, co-workers, and the public, and he would likely struggle dealing with normal pressures in a competitive work setting. (Dkt. No. 10-15 at 89 (Exhibit 6F)).   In contrast, the ALJ concluded Plaintiff can "interact occasionally with the public, supervisors, and co-workers, and respond appropriately to routine changes in [the] work setting." (Dkt. No. 10-3 at 29.)

**ii.     The ALJ's Determination that Dr. Flores's Examination was Unpersuasive .**

The ALJ provided specific, legitimate reasons for finding Dr. Flores's conclusions unpersuasive.   Appropriately, the ALJ considered the inconsistencies between the medical records and Plaintiff's self-reporting.   In making his conclusions, the ALJ "fully considered the medical opinions and prior administrative medical findings." (Dkt. No. 10-3 at 33.)   This consideration included review of the doctors who assessed Plaintiff's records at both the initial level of administrative review and at the reconsideration level.   *Id.*   For example, in October 2018, Dr. Matthew Snapp determined Plaintiff had only moderate limitations in concentrating, persisting, or maintaining pace, leading the ALJ to ultimately conclude Plaintiff is limited to a light RFC with some exceptions.   (Dkt. No. 10-3 at 33; Dkt. No. 10-5 at 9 (Exhibit 1A).)   Further, relating to Plaintiff's mental RFC, Dr. Snapp assessed that Plaintiff was able to understand, remember, and carry out detailed instructions but not complex instructions, make decisions, and attend and concentrate for extended periods.   (Dkt. No. 10-3 at 33; Dkt. No. 10-5 at 14 (Exhibit 1A).)   Also, Plaintiff could interact appropriately with supervisors and co-workers and respond appropriately to changes in routine work settings.   *Id.*   In February 2019, Dr. Blaine Carr affirmed Dr. Snapp's assessment.   *See* Dkt. No. 10-5 at 47 (Exhibit 5A); *see also* Dkt. No. 10-3 at 33 (citing both Exhibits 1A and 5A).   These assessments were largely consistent with and

17

supported by the evidence of record, including Dr. Flores's mental status examination findings during Plaintiff's psychological consultative examination.    (Dkt. No. 10-3 at 33; Dkt. No. 10-15 at 84-91 (Exhibit 6F); *see also* 20 C.F.R. §§ 404.1520c(c)(1), (2); 416.920c(c)(1), (2).)    Further, the ALJ also determined that given Plaintiff's continued mood abnormalities (citing to Dkt. No. 10-14 at 7 (Exhibit 2F); Dkt. No. 10-19 at 20 (Exhibit 11F))[25], Plaintiff had a moderate limitation relating to interacting with others and was thus appropriately limited to only occasional interaction with the public, supervisors, and co-workers.    *See* Dkt. No. 10-3 at 33; *Jacqueline L.*, 515 F. Supp. 3d at 13 (finding the ALJ "adequately considered and accounted for Plaintiff's stress-based limitations" by limiting the plaintiff's RFC to "occasional interaction with supervisors, coworkers and the general public, and low stress work, defined as work involving occasional decision making").    In this matter, the ALJ adequately explained how each of the records he found persuasive were consistent with and supported by the evidence from other exams as well as set limitations in consideration of said exams.    *See id.* at 33-34; 20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2) (supportability and consistency defined); SSR 85-15, 1985 WL 567857, at *4.

    The ALJ also explained that Dr. Flores's medical opinion was unpersuasive because it "is in excess of the mental status examination findings and is thus largely based on the claimant's self-reported limitations."    (Dkt. No. 10-3 at 34.)    In particular, Dr. Flores's finding that Plaintiff is limited to unskilled work is inconsistent with Plaintiff's clinical presentation of "full orientation, clear and coherent thoughts, good remote memory, unimpaired immediate memory, sufficient fund of information, and no thought abnormalities, despite his ability to only recall 1 of 3 objects after

---

[25] Referencing an in-person medical exam with Dr. Silvera on May 16, 2018 and an in-person counseling session on October 10, 2018.

five minutes." *Id.* (citing Dkt. No. 10-15 at 88).[26]   The ALJ also disagreed with the extent of Dr.

Flores's social interaction limitations because the limitations are inconsistent with the fact that

Plaintiff was cooperative and had a situationally appropriate demeanor during his exam.   *Id.*

Further, significant to the ALJ, no concentration deficits were noted on Plaintiff's exam given

Plaintiff's ability to successfully complete four calculations on the serial sevens task.   *Id.*; *see also*

Dkt. No. 10-15 at 88 (Exhibit 6F).   Finally, Dr. Flores's finding Plaintiff "would have difficulty

dealing with normal pressures in a competitive setting is undermined by [Plaintiff's] demonstrated

normal insight and satisfactory judgment, the absence of suicidal ideation[27], and his capacity to

engage in ample activities of daily living."   (Dkt. No. 10-3 at 34 (citing Dkt. No. 10-10 at 25-27

(Exhibit 5E); Dkt. No. 10-15 at 89 (Exhibit 6F)).)   The ALJ's decision noted that despite

Plaintiff's subjective allegations regarding his disability, he "engages in ample activities of daily

living."   *Id.* (citing Dkt. No. 10-10 at 25-27 (Exhibit 5E) (a self-assessment noting Plaintiff

prepares his own meals, does laundry, shops for groceries, pays bills, spends time with others, and

participates in hobbies including playing with his grandkids and watching television daily)).

During his examination with Dr. Flores, Plaintiff described his activities of daily living as: six to

eight hours of sleep per day with additional bouts of brief sleep during the day, dressing himself

independently and effectively (though he sometimes needs help due to difficulty with squatting

---

[26] The ALJ concluded Dr. Flores's recommendation is that Plaintiff is limited to unskilled work. "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time.   The job may or may not require considerable strength."   20 C.F.R. §§ 404.1568(a), 416.968(a).   Dr. Flores's prognosis is that Plaintiff has unspecified depressive disorder and cannabis use disorder (severe) (per American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition ("DSM-5")) and may struggle "managing functioning related to mood distress and medical condition."   (Dkt. No. 10-15 at 89-90.)   Plaintiff argues that proper consideration of this opinion would lead to the conclusion that Plaintiff would have difficulty meeting the requirements of even so called "low stress" jobs.   (Dkt. No. 17 at 15 (citing SSR85-15, 1985 WL 56857, at *4).)   Thus, if appropriately considered, then the vocational expert would have to provide further testimony of whether or not Plaintiff could perform jobs identified in the national economy.   *Id.*

[27] *See infra* Section II.A.iii. Plaintiff's Alleged Suicidal Ideation at 21-23.

and bending over), and he does not go out, cook for the family, or contribute to managing the household.  (Dkt. No. 10-15 at 87 (Exhibit 6F).)  This collective evidence supported a finding that Plaintiff was able to function at a greater level than assessed by Dr. Flores.

Dr. Carr, the State agency psychological consultant who provided the most recent assessment of Plaintiff in February 2019, reviewed Dr. Flores's examination along with the other available evidence in the record in arriving at his RFC assessment.  *See* Dkt. No. 10-5 at 34-47; *Zimmerman v. Astrue*, 288 F. App'x 931, 934 (5th Cir. 2008) (per curiam) (State Agency opinions supported ALJ decision).  Dr. Carr noted that the overall medical evidence of record did not reflect a degree of mental or emotional signs or symptoms that work-related abilities or activities would be significantly or consistently compromised.  (Dkt. No. 10-5 at 41 (Exhibit 5A).)  Dr. Carr observed Plaintiff was able to understand, remember, and carry out detailed, but not complex, instructions, make decisions, and attend and concentrate for extended periods.  *Id.* at 47.  Plaintiff could interact appropriately with supervisors and co-workers and respond appropriately to changes in a routine work setting.  *Id.*  The ALJ found this assessment persuasive because it was largely consistent with and supported by the evidence of record, including the mental status examination findings during Dr. Flores's psychological consultative examination.  *See* Dkt. No. 10-3 at 33 (citing Dkt. No. 10-15 at 84-91 (Exhibit 6F)).

In sum, there was conflicting evidence from several sources—including Dr. Flores and Dr. Carr, other medical records, and Plaintiff's own testimony—concerning the degree to which Plaintiff's pain and depression limited his ability to interact with others.[28]  The ALJ adequately

---

[28] In support of Plaintiff's claim, Plaintiff references in-person examinations with Dr. Galke on April 5, 2017, an examination with Dr. Davis on June 28, 2017, and examinations with Dr. Silvera on May 16, 2018 and May 23, 2018, that were not referenced by the ALJ.  (Dkt. No. 17 at 14.)  The examination with Dr. Davis was referenced within the decision.  *See* Dkt. No. 10-3 at 32-33 (citing to Dkt. No. 10-14 at 14-15); *supra* n.24.  The examination with Dr. Silvera on May 16, 2018 is also referenced within the decision.

interpreted the conflicting evidence by citing to and explaining where the evidence was both supportive and consistent with the mental RFC finding.   The ALJ found that although Plaintiff has severe impairments, he is still able to perform light, semi-skilled work, with the listed exceptions taking into consideration Plaintiff's limitations.   *See Jacqueline L.*, 515 F. Supp. 3d at 13.   Based on the foregoing, the undersigned finds the ALJ's RFC determination to be supported by substantial evidence.

### iii.   Plaintiff's Alleged Suicidal Ideation

Plaintiff argues he suffered from suicidal ideations and the ALJ erred in stating otherwise. (Dkt. No. 17 at 14.)   The ALJ's conclusion that there was an absence of suicidal ideation comes from the evolution of Plaintiff's mental health, supported by Plaintiff's medical records.   The ALJ did not suggest Plaintiff never suffered from suicidal ideations, however, the most recent examinations the ALJ relied upon did not show any suicidal ideations.

Plaintiff's depression is corroborated by several of his medical reports.   On May 16, 2018, at a visit with Dr. Silvera, Plaintiff reported feeling "distraught and depressed over multiple healthcare issues along with suicidal ideations, fatigue, and hopelessness." (Dkt. No. 10-3 at 31 (citing Dkt. No. 10-14 at 7 (Exhibit 2F)).)   During that visit, Plaintiff was crying throughout the examination, however, on that particular day he did not express suicidal ideations.   *Id.* (citing Dkt. No. 10-14 at 10).   Despite Plaintiff's endorsement of sadness and depression, he also

---

*See* Dkt. No. 10-3 at 33 (citing to Dkt. No. 10-14 at 7); *supra* n.25.   Dr. Galke noted that despite lacking energy, Plaintiff was alert, oriented, cooperative, and non-suicidal. (Dkt. No. 10-14 at 17.)   On May 16, 2018, Dr. Silvera noted Plaintiff was anxious and depressed but also alert and oriented. (Dkt. No. 10-14 at 9.)   And, on May 23, 2018, Dr. Silvera noted that despite Plaintiff being depressed and noting that his wife had left him at that time, Plaintiff was not suicidal or delusional and was alert and oriented.   *Id.* at 4. Each of these examinations note the difficult time Plaintiff was having, but they also note Plaintiff was alert, oriented, cooperative, and able to communicate with the doctors.   On balance, the exams are more consistent than inconsistent with the medical records and exams relied on by the ALJ to support the mental RFC finding.

demonstrated full orientation, cooperative behavior, normal judgment, an appropriate affect, an alert demeanor, and no focal defects. *Id.*

Additionally, in a September 2018 counseling visit with Home Family Health Center, Plaintiff indicated that due to the stress of his current health and work situation, Plaintiff takes his anger out on his wife. (Dkt. No. 10-3 at 31 (citing Dkt. No. 10-19 at 23 (Exhibit 11F)).) This led to stress in Plaintiff's relationship, but the counselor noted that Plaintiff did not demonstrate safety concerns as Plaintiff indicated he did not want to hurt himself or anyone else. *Id.* In an October 2018 counseling visit, Plaintiff noted positive progress with his mental health as he reported having beneficial therapy sessions. (Dkt. No. 10-3 at 31 (citing Dkt. No. 10-19 at 20 (Exhibit 11F)).) The counselor once again concluded Plaintiff did not present any mental health or safety concerns. *See* Dkt. No. 10-19 at 20. Based on these counseling reports, the ALJ concluded "that [Plaintiff's] mental health symptomatology is attenuated with therapeutic intervention." (Dkt. No. 10-3 at 31.)

Even Dr. Flores's notes from Plaintiff's psychological consultative examination on October 1, 2018 reveal that although Plaintiff stated he was "down", he denied thoughts of harming himself or others. (Dkt. No. 10-15 at 88 (Exhibit 6F).) And, although Plaintiff endorsed sadness and feelings of worthlessness during the exam, he only endorsed a *history* of suicidal ideation from eight months prior. *Id.* at 86. On this day, he denied "any ideation, plan, or intent to harm himself or others and did not exhibit any looseness of associations, tangential tendencies, or circumstantiality." (Dkt. No. 10-3 at 31.) Further, in review of Dr. Flores's evaluation, the ALJ pointed out that Plaintiff did not appear emotionally unstable, made appropriate eye contact, demonstrated cooperative behavior, had a well-kept appearance, normal speech, a clear sensorium, full orientation, and clear and coherent thoughts. *Id.* at 28 (citing Dkt. No. 10-15 at 88 (Exhibit

6F)). Plaintiff did have poor recent memory, although his immediate memory was unimpaired. *Id.* at 32 (citing 10-15 at 88 (Exhibit 6F)).[29] Plaintiff did recall one incident of hitting the refrigerator, but denies he was trying to kill himself or hurt others during this event. (Dkt. No. 10-15 at 86 (Exhibit 6F).)

In sum, there is evidence that Plaintiff may have exhibited suicidal ideation when he began his examinations in 2018; however, as time progressed, Plaintiff began responding to therapy and reporting improvements. And Plaintiff no longer discussed suicidal ideations. Thus, the ALJ's conclusion that Plaintiff did not suffer from suicidal ideations is sufficiently supported and the ALJ appropriately set forth limitations within the RFC due to evidence of Plaintiff's "continued mood abnormalities." *See Heck v. Colvin*, 674 F. App'x 411, 415 (5th Cir. 2017) ("Substantial evidence supports the ALJ's decision . . . [t]hat basis is enough to support our review." (quoting *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994))).

## CONCLUSION

### *Recommended Disposition*

After a careful review of the record and relevant law and based on the undersigned's conclusion that the ALJ's mental RFC determination was supported by substantial evidence and the ALJ did not err in weighing the persuasiveness of Dr. Flores's medical opinion, the undersigned recommends Defendant's Cross-Motion for Summary Judgment (Dkt. No. 18) be **GRANTED** and Plaintiff's Motion for Summary Judgment (Dkt. No. 16) be **DENIED**. It is further recommended Plaintiff's Complaint (Dkt. No. 1) be **DISMISSED** with prejudice, and the case be closed.

---

[29] The ALJ did say Plaintiff had poor recent memory, though *recent* and immediate memory were unimpaired, but that appears to be a typo as Dr. Flores's exam notes poor recent memory due to his inability to recall one of three objects after five minutes, yet good *remote* memory and unimpaired immediate memory. *See* Dkt. No. 10-3 at 32; Dkt. No. 10-15 at 88.

### *Notice to the Parties*

Within 14 days after being served a copy of this report, a party may serve and file specific, written objections to the proposed recommendations.   28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).   Failure to file written objections to the proposed findings and recommendations contained in this report within 14 days after service shall bar an aggrieved party from *de novo* review by the District Court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the District Court, except on grounds of plain error or manifest injustice.

The Clerk shall send a copy of this Order to Counsel for Plaintiff and Defendant.

**DONE** at McAllen, Texas, this 10th day of May, 2022.

Juan F. Alanis
United States Magistrate Judge